ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
MARK J. WENKER
Assistant U.S. Attorney
Arizona State Bar No. 018187
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4408
Telephone: (602) 514-7500
mark.wenker@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| Plaintiff, | |
| v. | |
| $24,646.00 in United States Currency, | |
| Defendant *In Rem*. | |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules):

**NATURE OF THE ACTION**

1. This is a civil action *in* rem, brought to enforce the provision of 21 U.S.C. § 881(a)(6) for the forfeiture of United States currency which represents money or other things of value furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and money used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq*.

2. This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of United States currency which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, including but not limited to dealing in a controlled substance and 18 U.S.C. § 1952, travel in interstate commerce with the intent to distribute proceeds of unlawful activity as defined in 18 U.S.C. §§ 1952, 1956(c)(7) and 1961.

3. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j), 28 U.S.C. § 1355(b) and § 1395 as acts and omissions occurred in the District of Arizona that give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345, 1355, 18 U.S.C. § 981(h).

## THE DEFENDANT *IN REM*

4. The defendant consists of $24,646.00 in United States currency (defendant property) seized on September 20, 2016. The defendant property is currently in the custody of the U. S. Customs and Border Protection.

## INTRODUCTION

5. The following information depicts an investigation conducted by the members of the Phoenix Police Department (PPD) and Commercial Narcotics Interdiction Unit (CNIU), based out of the Phoenix Sky Harbor International Airport, to which the Department of Homeland Security Investigations (HSI) Special Agent (SA) Brian Derryberry is assigned. The primary responsibility of this unit is to investigate crimes involving the use of commercial airlines and shipping companies to transport illegal drugs and drug proceeds.

6. Based upon the experience of CNIU investigators and investigations across the country, it is common knowledge that cities located in the Midwest and on the East Coast are known demand locations for illicit drugs. States such as Arizona and California are source locations due to their close proximity to the border of Mexico and established drug transportation routes. Person(s) involved in the illegal drug trade often hire couriers to transport drugs and/or proceeds from the sale of drugs by utilizing commercial airlines and shipping companies. In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious flight itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

7. Factors that constitute suspicious flight itineraries include airfare purchase at the counter immediately prior to departure or short notice reservations for a one-way travel, sometimes paid in cash. Couriers travel with minimal or no luggage and will often attempt to board the aircraft at the last possible moment. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement authorities and minimize their exposure to commercial airlines.

## BACKGROUND

8. On Monday, September 19, 2016, a member of the CNIU received a ticket tip on the travel of an individual identified as Sarji Harris (Harris), who was traveling on a one-way ticket from Chicago, Illinois to Phoenix, Arizona aboard American Airlines Flight 2023 seated in 27B. Harris purchased his ticket within 48 hours of travel. The ticket tip was the only information needed to conduct an investigation.

9. Investigators positioned themselves in the area of Gate A-24 to monitor the flight as it arrived to observe the passengers as they exited from the jet-way in order to conduct a consensual encounter with Harris.

10. After a few minutes, a male exited from the jet-way consistent with a passenger seated in Row 27. Investigators followed the male they believed to be Harris to the baggage claim area where Harris retrieved his luggage.

11. As the investigators were approaching Harris to make contact, he met up with a black female. PPD Detective Blaylock introduced himself to Harris as a Phoenix Police Detective and showed him his police credentials. He asked Harris and the female - later identified as Elemi - if they were together. The female said she was meeting Harris.

12. Detective Blaylock told Harris he was attempting to make contact with a passenger that arrived on the flight from Chicago Flight 2023. He asked Harris if he would provide his airline ticket. Harris was cooperative and provided his airline ticket. Detective Blaylock verified the name on the ticket and consequently told Harris that he was the individual he was looking for, and the reason for his contact with Harris regarding his travel itinerary was based on the ticket tip Detective Blaylock received about a passenger on that flight. When asked if Harris was traveling to Phoenix for business or for pleasure, he stated the travel was for business. Harris indicated he purchased his airline ticket one or two days ago. Later he told investigators that his sister purchased his airline ticket.

13. Detective Blaylock asked Harris if he was carrying any weapons. Harris said no. He asked Harris if he was carrying any illegal drugs. He said no. When asked if

4

he was carrying a large amount of currency, Harris stated he was travelling with about $2,000.00 in his front pants pocket and a stack of $1.00 bills in his backpack.

14. Harris said he did not have money in his checked luggage.

15. Harris gave consent for investigators to search his backpack and checked luggage. Harris opened his backpack and produced a bundle of money wrapped with rubber bands.

16. As his checked luggage was being searched, Harris stated he was going to buy a car with the money he had in his luggage. Harris appeared extremely nervous when bundles of money concealed in a pair of red sneakers were located in his luggage. When asked how much money was in his luggage, Harris stated he had about $22,000.00.

17. Investigators asked Harris why he did not respond to their question asked earlier about whether or not he had any money in his checked luggage. Harris stated that he thought the investigators' question was referring to having any money in his backpack.

18. Harris agreed to go to the CNIU office so that investigators could verify the total amount of money in his possession and ask Harris some questions about the $22,000.00 found in his luggage. Upon arrival in the office, Harris provided his Indiana identification and biographical information.

19. When asked if he had ever been arrested, Harris said yes, stating his only arrest was in Indiana for possession of marijuana for sale ten years ago. Detective Blaylock obtained Harris' arrest record, which included an arrest for murder in 1995, dealing marijuana in 2001, and dealing in cocaine in 2006 and 2007. Harris was not truthful and did not disclose all of his prior arrests to investigators. Investigators stated

Harris intentionally did not disclose all of his prior arrests involving his illegal drug sale activities.

20. Harris initially told investigators he traveled to Phoenix to visit Elemi, the female friend he met in the baggage claim area.

21. Harris also stated the reason for his travel to Phoenix was to buy a 1972 Monte Carlo from a seller on craigslist. He did not know the name or phone number of the seller, but that he last spoke to the seller "last week." Moments later, he said he last spoke to the seller "a couple days ago". He said the craigslist seller was asking for $20,000.00 in cash for the 1972 Monte Carlo.

22. Investigators asked Harris why he would travel from Chicago to Arizona to purchase a vehicle instead of getting one closer to where he lives. Harris stated the weather was better for the paint and condition of the vehicle in Arizona.

23. PPD detectives looked up all 1972 Monte Carlos on vehicles for sale on craigslist.com that were on sale in Phoenix and found only one. Harris indicated that the one vehicle in Phoenix was not the one he came to purchase.

24. When asked how he obtained the money he was travelling with, Harris said it was from his rental property, which he kept at his house.

25. Harris had two cell phones in his possession, and provided investigators with the phone numbers for both phones. Harris gave his consent for investigators to search both phones. PPD detectives documented several phone numbers from the call history logs of both cell phones.

26. Investigators discovered a photo of a large amount of money in Harris' Samsung cell phone, referred to as "trophy photo."

6

27. Based upon experience, investigators know "trophy photos" are commonly associated with drug dealers posing with the illegal drugs and/or illicit proceeds that are generated from the sale of illegal drugs.

28. Initially Harris claimed he downloaded the photo from the internet, but investigators told him the photo was taken with his cell phone camera.

29. Harris then changed his story and stated his friend was a pro-basketball player for New Orleans and the photo was of his friend's money.

30. Harris stated he was currently employed at the restaurant he owns. He said he filed taxes last year (2015), but he did not remember how much money he claimed on his taxes.

## **CANINE**

31. Detective Blaylock advised Harris that the money found in his possession would be examined by a certified narcotic detection canine. They asked if there was any reason why the canine alert to the money in his possession.

32. Harris replied that the money had not been exposed to drugs.

33. Detective Pablo Desantiago and his Certified Narcotic Detection Canine, Zeus, arrived at the CNIU office to conduct a money sniff on the currency in Harris' possession.

34. Zeus is a four-year-old black Labrador retriever trained to alert to the odor of currency only when such currency has been in recent close proximity to marijuana, cocaine, methamphetamine, heroin, and their derivatives. As Zeus is a "sophisticated drug dog" and a positive alert to currency by Zeus is "strong evidence" that the currency is connected to drug trafficking. *See United States v. $132,245.00 in U.S. Currency*, 764

7

F.3d 1055, 1058-59 (9th Cir. 2014).  Zeus is currently certified with the National Police Canine Association (NPCA), last certified on January 23, 2018.  Detective Desantiago is the first and only handler of Zeus.

35. Detective Desantiago gave Zeus the command to sniff the area outside the CNIU office.  The area consisted of five empty suitcases that were set out, trashcans, vents and doors.  Zeus had no change in behavior as he sniffed the area.

36. Detective Koontz set the currency found in Harris' possession in the outside pocket of an empty suitcase and set it on the floor.  After approximately ten minutes, Detective Desantiago commanded Zeus to sniff the area again.  Zeus sniffed the entire area to include the other empty suitcases.  As Zeus passed by the suitcase where the money was located, he stopped and began to sniff rapidly around the suitcase.  Zeus then scratched on the suitcase several times.  Detective Desantiago recognized this behavior as a positive alert indicating Zeus smelled one of the four odors he is trained to detect.

37. Detective Blaylock advised Harris that the results of the narcotic canine sniff test was positive on the money in his possession.  Harris could not explain how the money was exposed to drugs.

38. Detective Rodriguez and Detective Baylock noted a strong odor of marijuana in Harris' backpack.  Harris admitted he smokes marijuana and does not have a medical marijuana card.

39. The total count of the currency in Harris' possession was $24,646.00 in U.S. currency consisted of 35 $100.00 bills, 69 $50.00 bills, 859 $20.00 bills, 26 $10.00 bills, 19 $5.00 bills, and 161 $1.00 bills.

8

40. The defendant currency primarily consisted of twenty-dollar bills. Narcotic payments often are made with twenty-dollar bills. The defendant currency is consistent with proceeds from street level sales of narcotics.

41. Detective Blaylock explained to Harris that he believed the money Harris was carrying was involved in illegal criminal activity. Detective Blaylock told Harris that he would receive documentation in the mail explaining his options. He provided Harris with a receipt for the money, along with a report number.

42. Investigators briefly spoke with Elemi, the woman who met up with Harris in the baggage claim area when he got off the plane. She stated Harris was coming to visit her and possibly buy a car. Investigators noted that Elemi heard the conversation between Detective Blaylock and Harris earlier in the baggage claim area and observed the PPD detectives when the money was discovered in Harris' checked luggage.

43. Upon information and belief, the following is a summary of Harris' arrests and convictions:

    1995       -- Murder

    05/11/2001 – Dealing in Marijuana; Resisting Law Enforcement

    05/05/2005 – Felon in Possession of a Hand Gun

    05/23/2006 – Dealing in Cocaine

    10/29/2007 – Dealing in Cocaine

    12/19/2007 - Convicted and sentenced to 4 years, 3 months and 7 days for

        dealing in cocaine or narcotics drug, with an earlier possible release date of

        December 18, 2009.

9

44. Harris was traveling from Chicago, IL (a known demand location for illegal drugs) to Phoenix, AZ. He was traveling on a one-way ticket purchased within 48 hours prior to the scheduled flight.

45. Harris was deceptive when investigators initially asked if he was carrying large amounts of currency with him. Harris stated he was not traveling with any large amounts of currency, when in fact he was in possession of $24,646.00.

46. It is not uncommon for money carriers involved in transporting illegal criminal proceeds to separate or try to minimize the amount of money they are transporting to try to minimize the potential for discovery of all the money in their possession by law enforcement personnel. Harris stated he did not have any large amounts of currency in his possession. Investigators found $24,646.00 in Harris' possession: $1,996.00 in his left front pants pocket, $150.00 in his backpack, and $22,500.00 concealed in a pair of red tennis shoes in his checked luggage.

47. Harris appeared nervous throughout the contact and interview process. At times his story did not make sense.

48. Harris could not provide investigators with receipts/check stubs on how he obtained/earned the money.

49. A certified narcotic detection canine alerted to the money in Harris' possession, indicating the money ($24,646.00) had been exposed to drugs.

50. Four of the cell phone numbers from Harris' cell phone call history log on one of his two cell phones were identified in prior DEA investigations. One of the cell phone numbers is a local Phoenix cell phone number.

51. On September 19, 2016, the defendant property was detained by the PPD CNIU members. On September 20, 2016, SA Derryberry seized the defendant property, turning it over to the Customs and Border Protection for administrative forfeiture.

52. Harris initially requested that CBP consider the petition he submitted administratively before forfeiture proceedings were initiated. In his request, Harris claimed that his mother had passed away, that a portion of the seized money came from a distribution of his mother's 401(k), and that the money was to be used in Harris' business. Harris never made this claim on the date the money was seized.

53. On January 30, 2018, Harris submitted a claim to CBP requesting judicial determination.

54. On March 27, 2018, the government asked Harris' attorney for a clean copy of the retirement account statement and distribution check from it along with documentation of Harris' rental income, including rental agreements and rent checks.

55. Harris has not provided any of the requested information.

56. Harris has no reported wages from 2015 through 2017.

57. Harris' travel history includes:
   a. On Harris' September 19, 2016 flight from Chicago to Phoenix on American Airlines flight AA2023 (with 1 checked bag), the base fare of $129.30 for the flight ticket was purchased for Harris by Kesha S Harris-Neely, 586 S Vigo, Gary, IN; phone number 219-359-6672; and email neelylatoya@yahoo.com.
   b. On November 27, 2015, Harris flew from Chicago to Phoenix on American Airlines flight AA2190 with one checked bag.
   c. On November 30, 2015, Harris flew from Phoenix to Chicago on American Airlines flight AA1726 with one checked bag.
   d. On September 6, 2015, Harris flew from Phoenix to Chicago on American Airlines flight AA486 with no checked bags.

11

e. On June 5, 2015, Harris flew from Chicago to Puerto Rico on American Airlines flight AA395 with one checked bag.

f. On June 8, 2015, Sarji Harris flew from Puerto Rico to Chicago on American Airlines flight AA1324 with one checked bag.

## FIRST CLAIM FOR RELIEF

Based on the aforementioned facts and circumstances, the defendant property was furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and therefore is subject to forfeiture to the United States pursuant to 21 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

The defendant property constitutes or is derived from proceeds traceable to some form of specified unlawful activity, conducted and attempted to conduct a financial transaction, i.e., the movement of the proceeds of trafficking in controlled substances in violation of 18 U.S.C. § 1952, and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States of America prays that process of warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for

disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 30th day of April, 2018.

                                        ELIZABETH A. STRANGE
                                        First Assistant United States Attorney
                                        District of Arizona

*S/Mark J. Wenker*
MARK J. WENKER
Assistant United States Attorney

**VERIFICATION**

I, Brian T. Derryberry, verify and declare under penalty of perjury that I am a Special Agent with the Department of Homeland Security, that I have read the foregoing Complaint for Forfeiture *In Rem* and know the contents, and that the matters contained in the Complaint are true to my own knowledge, except that those matters alleged upon information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

I verify and declare under penalty of perjury that the foregoing is true and correct. Executed on this 30th day of April, 2018.

Brian T. Derryberry, Special Agent
Department of Homeland Security

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.